UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

UNITED STATES OF AMERICA,

                Plaintiff,

      -against-                     12 Cr. 844(RWS)

                                             SENTENCING
EDUARDO ANDINO,                     OPINION

                Defendant.

------------------------------------X

**Sweet, D.J.**

On May 23, 2013, Eduardo Andino ("Andino" or "Defendant") pled guilty and allocuted to conspiring to distribute and possess with intent to distribute cocaine and marijuana as well as illegal possession of a firearm.

For the reasons set forth below, Andino will be sentenced to five years' imprisonment followed by five years' supervised release, subject to the scheduled sentencing hearing on February 13, 2015. Defendant is also required to pay a special assessment of $500.

**Prior Proceedings**

Defendant was named in a five-count felony information (the "Indictment") filed in the Southern District of New York. The first count of the Indictment charges that from about February 2011, up to and including August 2012, in the Southern District of New York and elsewhere, Andino, a/k/a "Eduardo Andino-Rosado," and others, conspired to distribute and possess with intent to distribute 5 kilograms and more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A) ("Count 1").

The second count of the Indictment charges that on August 1, 2012, in the District of New Jersey, Andino distributed and possessed with the intent to distribute 5 kilograms and more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)A) ("Count 2").

The third count of the Indictment charges that from 2008, up to and including 2010, in the District of Puerto Rico and elsewhere, Andino and others conspired to distribute and possess with the intent to distribute 100 kilograms and more of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) ("Count 3").

The fourth count of the Indictment charges that in 2011, in the District of Puerto Rico, Andino, after having previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, did possess .40 caliber Glock, which previously has been shipped and transported in interstate and foreign commerce ("Count 4").

The fifth count of the Indictment charges that in March 2012, in the District of Puerto Rico, Andino after having been previously convicted in a court of a crime punishable by imprisonment for a term exceeding one year, possessed a Smith & Wesson pistol, which previously had been shipped and transported in interstate and foreign commerce ("Count 5").

As a result of committing the offenses charged in Counts 1, 2, and 3, Andino shall forfeit to the United States, pursuant to 21 U.S.C. § 853, any and all property constituting proceeds obtained directly or indirectly from the offenses and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offenses. Defendant admits the forfeiture allegation with respect to Counts 1 through 3.

Defendant agrees to waive venue with respect to Counts 2 through 4 and is scheduled to be sentenced on February 13, 2015.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

4

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Defendant's personal and family history.

5

## The Offense Conduct

The Court adopts the facts set forth in the PSR with respect to the offense conduct. These facts are summarized, in brief form, below.

In approximately 2011, Andino was hired, along with others, to assist in packaging cocaine in Puerto Rico and delivering it to New York. Cocaine was brought to Andino's house in Puerto Rico, where Andino and Omar Aponte ("Aponte") constructed hollowed-out sets of bamboo flooring, inserted kilograms of cocaine into the flooring, and put the flooring back in boxes from which it had come. Multiple boxes of flooring would then be stacked onto pallets to be shipped to New Jersey.

Pablo Ventura-Nieves ("Ventura-Nieves") rented a warehouse in Bayonne, New Jersey, to be used to break open the pallets of wood flooring once they had arrived from Puerto Rico. Ventura-Nieves also rented an apartment above the warehouse where he, Andino, and others could stay while in New Jersey. On various occasions in 2011 and 2012, Andino and Aponte removed cocaine from the flooring while Ventura-Nieves and Alfredo Vasquez-Esparra would either reconstruct the flooring or destroy

the flooring, depending on whether the group had decided to re-use the flooring for a future venture.

Andino and Aponte then delivered the cocaine to various individuals who they would meet in a public parking lot. They would then take individuals' cars back to the warehouse and load them with boxes of cocaine and return the cars to individuals in the parking lot.

On August 1, 2012, Wilfredo Aquino ("Aquino") traveled from New York to New Jersey to pick up 28 kilograms of cocaine from Andino and Aponte. They met in a Burger King parking lot in Bayonne, and Andino and Aponte then brought Aquino's car back to the warehouse to load it with drugs. They returned the drug-filled car to Aquino. Aquino's car was then pulled over by law enforcement officers and the 28 kilograms were seized. Shortly thereafter, Andino and Aponte were each pulled over. 20 kilograms of cocaine were seized from the car driven by Andino.

Agents obtained consent from Andino to search the warehouse, where they seized approximately 300 kilograms of cocaine as well as many boxes of both intact and hollowed-out bamboo flooring. Andino is culpable for approximately 350

kilograms of cocaine in relation to his arrest on August 1, 2012.

Investigation by the Government revealed that beginning in around 2008, Andino started distributing marijuana with Nelson Gustavo Colon-Torrez. Andino's role was to transport money from Puerto Rico to Texas, which Andino did on four or five occasions. Andino also purchased some of the marijuana to sell on his own. The marijuana conspiracy lasted for approximately two years, until the supplier stole money belonging to the conspirators. Andino admitted that his actions in the marijuana conspiracy involved approximately 500 kilograms of marijuana.

The Government subsequently discovered that during 2011, Andino purchased a .40 caliber Glock, which he quickly re-sold. Andino only used the .40 caliber Glock on New Year's Eve, when he fired it in the air in celebration. Andino also purchased a Smith and Wesson firearm in or about March 2012, and sold it to Aponte. Andino did not make a profit on the sale.

The Government indicated that neither firearm was used or possessed in connection with or in furtherance of the drug conspiracy.

Defendant admitted to conspiring to distribute and possess with intent to distribute approximately 2,350 kilograms of cocaine and approximately 500 kilograms of marijuana over the life of the offense.

**The Relevant Statutory Provisions**

The maximum term of imprisonment for Counts 1, 2, and 3 is life imprisonment. 21 U.S.C. §§ 841(b)(1)(A), 851, 846. The maximum term of imprisonment for Counts 4 and 5 is 10 years on each count. 18 U.S.C. § 922(g).

The Court must impose a term of supervised release of at least 10 years for Counts 1 and 2 (21 U.S.C. §§ 841(b)(1)(A), 846), of at least 8 years for Count 3 (21 U.S.C. §§ 841(b)(1)(B), 846, 851), and of not more than three years for each Counts 4 and 5 (18 U.S.C. § 3583(b)(2)). Multiple terms of supervised release shall run concurrently. 18 U.S.C. § 3624(e).

Defendant is not eligible for probation. 21 U.S.C. §§ 841(b)(1)(A) & (B), 3561(a)(3).

The maximum fine is $20,000,000 for Counts 1 and 2 (21 U.S.C. §§ 841(b)(1)(A), 846), $8,000,000 for Count 3 (21 U.S.C.

9

§§ 841(b)(1)(B), 851), and $250,000 for Counts 4 and 5 (18 U.S.C. § 3571(b). A special assessment of $500 is mandatory pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2014 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11.

Counts 1, 2, and 3 are grouped for guideline calculation purposes. U.S.S.G. § 3D1.2(d)). Counts 4 and 5 are similarly grouped for guideline calculation purposes. Id. The guideline for 21 U.S.C. §§ 846 and 841 offenses is found in U.S.S.G. § 2D1.1. Defendant is responsible for conspiring to distribute approximately 2,350 kilograms of cocaine and 500 kilograms of marijuana. Pursuant to § 2D1.1(c)(1), an offense involving an excess of 450 kilograms of cocaine has a base offense level of 38.

With regard to Counts 4 and 5, pursuant to U.S.S.G. § 2k2.1(a)(4)(A) provides for a base offense level of 20. Because Defendant possessed two firearms which he purchased and then sold, a four-level increase is warranted. U.S.S.G. §

10

2k2.1(b)(5). Additionally, because during the instant offense Defendant possessed and transferred a firearm to Aponte, a co-conspirator, another four-level increase is warranted. U.S.S.G. § 2k2.1(b)(6)(B).

The greater of the adjusted offense levels is 38. No additional increase in offense level will be added and, as such, the combined adjusted offense level is 38.

The Defendant has demonstrated acceptance of responsibility for the offense and has assisted authorities in the investigation or prosecution of the Defendant's own misconduct by notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by three levels. U.S.S.G. §§ 3E1.1(a) & (b).

The Defendant has one known adult conviction. On December 18, 1996, Defendant was sentenced to 24 months' imprisonment and 4 years' supervised release in the U.S. District Court for the District of Puerto Rico for violation of the Federal Controlled Substance Act. Pursuant to U.S.S.G. §§ 4A1.1(a) and (e)(1), this conviction warrants three criminal history points. Pursuant to the sentencing table in U.S.S.G.

Chapter 5, three criminal history points establishes a Criminal History Category of II.

Based on a total offense level of 35 and Criminal History Category of II, the guideline range of imprisonment is 188 months to 235 months. However, due to the statutory penalties of Counts 1 and 2, the term of imprisonment is 240 months pursuant to U.S.S.G. § 5G1.1(b).

The range for a term of supervised release is 10 years for Counts 1 and 2 (U.S.S.G. § 5D1.2(c)), 8 years for Count 3 (U.S.S.G. § 5D1.2(c)), and one to three years for each Counts 4 and 5 (U.S.S.G. § 5D1.2(a)(2)). The Court shall order a term of supervised release when required by statute (U.S.S.G. § 5D1.1(a)(1)), or except for a deportable alien who is likely to be deported after imprisonment, when a term of imprisonment of more than one year is imposed (U.S.S.G. § 5D1.1(a)(2)). In any other case, the Court may order a term of supervised release, pursuant to U.S.S.G. § 5D1.1(b).

Defendant is not eligible for probation. U.S.S.G. §§ 5B1.1(b)(2) & (b)(3).

The fine range for these offenses is $20,000 to $48,000,000. U.S.S.G. § 5E1.2(c)(3).

Costs of prosecution shall be imposed on the Defendant, as required by statute. U.S.S.G. § 5E1.5. In determining whether to impose a fine and the amount of such a fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. U.S.S.G. § 5E1.2(d)(7); 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated June 24, 2014, provides a daily cost of $80.25, a monthly cost of $2,440.97, and an annual cost of $29,261.62 for imprisonment.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's

13

decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For the instant offenses, Andino shall be sentenced to a term of 5 years' imprisonment to be followed by five years' supervised release.[1]

As mandatory conditions of his supervised release, the Defendant shall:

1. Not commit another federal, state, or local crime.
2. Not illegally possess a controlled substance.
3. Not possess a firearm or destructive device.

---

[1] With respect to his term of imprisonment: five years on Counts 1 and 2, four years on Count 3, and two years on Counts 4 and 5, to run concurrently for a total of 5 years. With respect to his term of supervised release: five years each on Counts 1 and 2, four years on Count 3, and one year each on Counts 4 and 5, to run concurrently.

14

4. Cooperate in the collection of DNA as directed by
      the probation officer.

The standard conditions of supervision (1-13) are recommended with the following special conditions:

   1. Defendant will participate in a program approved
      by the United States Probation Office, which
      program may include testing to determine whether
      Defendant has reverted to using drugs or alcohol.
      The Court authorizes the release of available
      drug treatment evaluations and reports to the
      substance abuse treatment provider as approved by
      the Probation Officer.  Defendant will be
      required to contribute to the costs of services
      rendered (co-payment), in an amount determined by
      the probation officer, based on ability to pay or
      availability of the third-party payment.

   2. Defendant shall submit his person, residence,
      place of business, vehicle, or any other premises
      under his control to a search on the basis that
      the probation officer has reasonable belief that
      contraband or evidence of a violation of the
      conditions of the release may be found.  The
      search must be conducted at a reasonable time and
      in a reasonable manner.  Failure to submit to a
      search may be grounds for revocation.  Defendant
      shall inform any other residents that the
      premises may be subject to search pursuant to
      this condition.

   3. Defendant shall provide the probation officer
      with access to any requested financial
      information.

   4. Defendant is to report to the nearest Probation
      Office within 72 hours of release from custody.

   5. Defendant is to be supervised by the district of
      residence.

It is further ordered that Defendant shall pay to the United States a special assessment of $500, which shall be due immediately.

Defendant does not have the ability to pay a fine and so the fine in this case is waived.

Defendant shall forfeit the Defendant's interest in any and all proceeds and property used or intended to be used to commit and/or facilitate the commission of the offenses pursuant to 21 U.S.C. § 853. See Fed. R. Crim. P. 32.2.

The Defendant is ineligible for voluntary surrender. 18 U.S.C. § 3143(a)(2).

It is so ordered.

**New York, NY**
**February 9, 2015**

_____
ROBERT W. SWEET
U.S.D.J.